[No. 30961-7-I.   Division One.   December 13, 1993.]

SKILCRAFT FIBERGLASS, INC., *Plaintiff*, v. THE BOEING COMPANY, ET AL, *Respondents,* JOAN CAROL WADSWORTH, ET AL, *Defendants,* ROLAND O. BALLOUN, *Appellant.*

*Roland O. Balloun,* pro se, *Karen F. Jones* and *Riddell, Williams, Bullitt & Walkinshaw,* for appellant.

*Arthur D. McGarry* and *Oles, Morrison & Rinker; Kandice G. Tezak* and *Ryan, Swanson & Cleveland,* for respondents.

COLEMAN, J. — Roland O. Balloun appeals the trial court's judgment imposing CR 11 sanctions, arguing that neither Boeing nor Hermanson Corporation was entitled to be served with his default motion against Boeing and that deficiencies in the bond recorded by Hermanson justified his actions in seeking the default judgment. We affirm.

In October 1990, Hermanson Corporation, the primary contractor on a construction project for the Boeing Company, entered into an agreement with Skilcraft Fiberglass, Inc., under which Skilcraft was to provide ducting materials for the project. Subsequently, Hermanson concluded that Skilcraft's performance was deficient and replaced Skilcraft with another supplier.

In mid-1991, Skilcraft filed a claim of lien for approximately $150,000 against Boeing's property, where the construction project had taken place. Skilcraft claimed that Hermanson owed it that amount for materials Skilcraft had delivered pursuant to the agreement. On February 13, 1992, Skilcraft filed a complaint against Hermanson for breach of contract. Included in the complaint was a lien foreclosure claim against Boeing's property.

On February 18, 1992, Hermanson filed a notice of appearance in the lawsuit. On February 20, 1992, to release the lien against Boeing's property, Hermanson filed a bond in the amount of $300,754, replacing an earlier, deficient, bond that Hermanson had filed. Upon receiving notice of Hermanson's intent to file this second bond, Skilcraft's attorney, Roland O. Balloun, sent Hermanson a letter requesting that Herman-

son send documentation to verify that the bond issuer was financially able to meet its guaranties. This letter also stated: "If Hermanson fails to comply with RCW 60.04.115 [release of lien — bond statute], Skilcraft will move for default judgments against any and all defendants that fail to timely answer Skilcraft's complaint." Brief of Respondent app. A, at 17. Hermanson immediately sent Balloun the requested documentation. The next day, Hermanson spoke with Balloun on the telephone, asking whether Skilcraft, having received a copy of the bond and the requested documentation regarding the insurer, would now release its lien against Boeing's property. Balloun replied that "he anticipated he would because, in view of RCW 60.04.115, he did not have much choice."

In late February 1992, Hermanson left a message on Balloun's answering machine, asking again whether Skilcraft intended to amend its complaint to drop its claim against Boeing. In a letter dated March 11, 1992, Balloun replied that amending the complaint was unnecessary and not required by former RCW 60.04.115.

On March 11, 1992, Balloun, without notifying Boeing or Hermanson, filed a motion and affidavit for order of default against Boeing, and Skilcraft was awarded a $150,000 default judgment against Boeing. When Boeing demanded that Balloun vacate the default judgment, Balloun replied that the judgment was proper because the bond filed by Hermanson was deficient under former RCW 60.04.115.

On March 26, 1992, Boeing and Hermanson filed a motion to vacate the default judgment and for terms against Balloun and Skilcraft. The trial court concluded that Balloun had obtained the default judgment against Boeing improperly because Hermanson's bond had released the lien on Boeing's property. The trial court also concluded that Balloun violated CR 5 by not serving Hermanson with the default motion against Boeing.[1] The trial court ordered Balloun and Skil-

---

[1] The trial court concluded that Balloun's actions constituted the following:

"a. A violation of the duty to conduct a reasonable inquiry into the facts supporting the motion, and the necessity to provide notice thereof to Hermanson in

craft to pay Hermanson and Boeing approximately $22,000 in attorney fees. Balloun appeals.[2]

We first determine whether Balloun's misconduct warranted sanctions under CR 11.

■ CR 11 provides that every pleading, motion, and legal memorandum submitted by an attorney on behalf of a party shall be signed by the attorney and that

> [t]he signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum; that to the best of the party's or attorney's knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . .

CR 11 further provides that a court may order sanctions against any party or attorney who signs a document in violation of the rule. A reviewing court will not reverse CR 11 sanctions absent an abuse of discretion. *Harrington v. Pailthorp*, 67 Wn. App. 901, 841 P.2d 1258 (1992) (citing *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 132, 783 P.2d 82, *review denied*, 113 Wn.2d 1001 (1989)), *review denied*, 121 Wn.2d 1018 (1993).

In the present case, the trial court sanctioned Balloun for the representations in his affidavit in support of the default motion, which stated that Skilcraft was entitled to a default judgment against Boeing. Balloun argues that his actions were reasonable because (1) he was not required to serve

accordance with applicable court rules, particularly when taking the default judgment against Boeing was inconsistent with Mr. Balloun's prior written and oral representations to Hermanson's counsel;

"b. A breach of the duty to conduct a reasonable inquiry into the law, such that the motion is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

"c. A breach of the duty not to interpose the motion for the purposes of delay, harassment, or increasing the costs of litigation."

[2]Initially, Skilcraft appealed the order as well, but its appeal was subsequently dropped.

Boeing or Hermanson with the default motion and (2) defects in Hermanson's bond justified his actions in seeking a default judgment against Boeing. For the reasons below, we conclude that neither of these arguments has any merit.

■■ CR 55(a)(3) provides:

> *Notice.* Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion. Any party who has not appeared before the motion for default and supporting affidavit are filed is not entitled to a notice of the motion, except as provided in rule 55(f)(2)(A).

RCW 4.28.210 provides that a defendant appears in an action when he "answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his appearance." However, these methods of appearing are not exclusive, and "courts have recognized various informal acts as sufficient to constitute an appearance." *Shreve v. Chamberlin*, 66 Wn. App. 728, 732, 832 P.2d 1355 (1992), *review denied*, 120 Wn.2d 1029 (1993).

In *Gage v. Boeing Co.*, 55 Wn. App. 157, 776 P.2d 991, *review denied*, 113 Wn.2d 1028 (1989), Gage appealed two decisions by the Board of Industrial Insurance Appeals in which Boeing had prevailed. When Boeing failed to file any notices of appearance, Gage obtained default judgments without notifying Boeing. The trial court granted Boeing's motions to vacate the judgments, and Gage appealed. *Gage*, at 158-59.

The Court of Appeals reiterated the general rule that default judgments are not favored in the law and "must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Gage*, at 160-61 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Because of this rule, the court reasoned that the concept of appearance, for purposes of CR 55 (default judgments), must be construed broadly. *Gage*, at 161. The court stated:

> Whether a party has "appeared" for purposes of the rule requiring notice prior to an entry of default is generally a ques-

tion "of intention, as evidenced by acts or conduct, such as the indication of a purpose to defend or a request for affirmative action from the court, constituting a submission to the court's jurisdiction."

*Gage,* at 161 (quoting Annot., *What Amounts to "Appearance" Under Statute or Rule Requiring Notice, to Party Who Has "Appeared," of Intention To Take Default Judgment,* 73 A.L.R.3d 1250, 1254 (1976)). The court then cited several cases in which a defendant's informal actions have been held to constitute an appearance for purposes of CR 55. *Gage,* at 162. Finally, the court concluded that because Boeing had vigorously contested all of Gage's claims through the administrative level, Gage could "have entertained no illusions regarding respondent's intentions to contest the claims." *Gage,* at 162.

Balloun argues that he was not required to give Boeing notice of the default proceedings because Boeing never appeared in the action. He further argues that because default motions are heard ex parte, under CR 5 he was not required to serve the default motion on Hermanson.[3] Balloun argues that his conclusion that neither Boeing nor Hermanson was entitled to notice constituted a reasonable interpretation of the law and, therefore, his actions did not warrant CR 11 sanctions.

We disagree. Like the appellant in *Gage,* Balloun could have entertained no illusions about Boeing's intentions to contest the lien foreclosure. The actions taken by Hermanson on behalf of Boeing apprised Balloun of Boeing's intention to contest the lien foreclosure, and Boeing was therefore entitled to notice of the default proceedings, either directly or through Hermanson, its representative.[4] Moreover, Bal-

---

[3] CR 5(a) provides, in part, that "every written motion other than one which may be heard ex parte . . . shall be served upon each of the parties."

[4] Also, the general rule in the federal courts is that default judgment should not be entered against one of several jointly liable defendants until the claim is adjudicated with regard to the other defendants. This rule can be extended to "situations in which several defendants have closely related defenses." 10 C. Wright, A. Miller & M. Kane, *Federal Practice* § 2690, at 455-59 (1983). This rule supports the view that Hermanson, as a defendant whose rights were closely related to Boeing's, was entitled to notice.

loun obtained the default judgment after explicitly representing to Hermanson that he would not be pursuing his claim against Boeing. Under these circumstances, the failure to notify either party was unreasonable.

Former RCW 60.04.115 provides, in part, that in order to release a lien on its property, a party may file a bond which (1) is acceptable to the lien claimant, (2) contains a description of the claim of lien and real property involved, and (3) represents a sufficient sum, as specified in the statute.[5] Balloun argues that Hermanson's bond was insufficient to release the lien on Boeing's property because it referred to a lien recorded in May 1992, as opposed to 1991, and because it did not refer to a lien recorded under a particular recording number with the county auditor.

We find these arguments unpersuasive. As Hermanson points out, the incorrect year on the bond was a minor typographical error, and since Skilcraft had only one prior lien on Boeing's property, it was clear to which lien the bond was referring. Furthermore, former RCW 60.04.115, by its terms, does not require reference to a particular recording number so long as the description of the lien is sufficiently definite. Most importantly, however, Balloun never communicated any objections to the bond to either Hermanson or Boeing. Thus, we reject his argument that the default was justified due to deficiencies in the bond.

We believe that the specific facts of this case require the conclusion that Balloun's actions were unreasonable. Balloun's oral and written statements to Hermanson indicated he was aware that Hermanson was attempting to comply with the lien release statute on behalf of Boeing. In addition, Balloun never objected to the bond that Hermanson filed, and he represented to Hermanson that he would not be pursuing his claim against Boeing. To obtain a default judgment against Boeing under these circumstances clearly evidenced bad faith. Moreover, when Balloun's actions are viewed in the context of his prior dealings with Hermanson,

---

[5]This statute is now RCW 60.04.161, but these requirements have not changed.

it is evident that they were interposed for an improper purpose. Thus, the trial court's award of CR 11 sanctions was proper.[6]

We last determine whether Hermanson is entitled to attorney fees on appeal.

■ Hermanson has requested attorney fees on appeal on two grounds: (1) the trial court's order of CR 11 sanctions awarded Boeing and Hermanson costs and reasonable attorney fees in collection of the judgment against Balloun; and (2) RAP 18.1 and RAP 18.9(a) allow this court to award attorney fees for a frivolous or improper appeal. Both grounds are applicable. As Hermanson argues, responding to this appeal could reasonably be viewed as a cost of collecting the judgment from Balloun. In addition, because Balloun's behavior was a clear violation of CR 11 and involved substantial bad faith conduct, we agree with Hermanson that the appeal is frivolous and improper. Thus, Hermanson will be awarded its reasonable attorney fees on appeal.

The order of the trial court is affirmed.

SCHOLFIELD and KENNEDY, JJ., concur.

---

[6]Balloun argues in his brief that Hermanson did not have standing to be awarded sanctions. However, it is clear that Hermanson was a real party in interest. Hermanson had a contractual obligation to indemnify Boeing, its counsel was acting on behalf of both Hermanson and Boeing, and Hermanson incurred substantial costs as a result of Balloun's actions.

In addition to being proper under CR 11, an award of attorney fees to both Hermanson and Boeing was a proper exercise of the trial court's inherent power to assess attorney fees against an attorney for bad faith litigation conduct. *Wilson v. Henkle*, 45 Wn. App. 162, 174-75, 724 P.2d 1069 (1986).